UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-00053-TBR

**VIRGINIA BUDDE**                                                                                     **PLAINTIFF**

**v.**

**STATE FARM MUTUAL**
**AUTOMOBILE INSURANCE COMPANY**                                            **DEFENDANT**

### MEMORANDUM OPINION

This matter comes before the Court upon Defendant, State Farm Automobile Insurance Company's, Motion for Summary Judgment (Docket #10). The Plaintiff, Virginia Budde, has filed a response (Docket #13). The Defendant has filed a reply (Docket #16). This matter is now ripe for adjudication. For the reasons that follow, the Defendant's Motion for Summary Judgment is GRANTED.

### BACKGROUND

This action arises out of a motorcycle accident on May 7, 2005, which resulted in significant bodily injury to Virginia Budde. The motorcycle was negligently operated by Jerry Jarrett. On the date of the accident, Budde had an automobile insurance policy with State Farm that provided underinsured motorist ("UIM") benefits. Budde's damages exceeded Jarrett's liability insurance coverage and she filed a claim to recover under State Farm's policy. State Farm denied Budde's claims on grounds that the motorcycle was a vehicle furnished for her regular use and the policy excluded coverage for injuries arising form her use or occupancy of the motorcycle.

On March 2, 2006, Budde filed suit against State Farm in McCraken Circuit Court seeking recovery of UIM benefits under the policy. The primary issue was whether the motorcycle at issue

was a vehicle furnished for Budde's regular use.  If it was a vehicle furnished for regular use, then State Farm's policy excluded coverage.  The parties filed cross-motions for summary judgment in state court and the trial court ruled in Budde's favor.  The Kentucky Court of Appeals affirmed and State Farm tendered its policy limits plus costs and interest to Budde.

Budde filed the current action in McCracken Circuit Court on March 4, 2009.  State Farm removed the action to this Court on April 6, 2009, under diversity jurisdiction.  Budde alleges a bad faith claim against State Farm for its refusal to pay Budde's claim and refusal to settle her claim.  A telephonic Rule 16 Scheduling Conference was held on May 12, 2009, where both parties agreed to brief the narrow issue of whether State Farm's post-litigation conduct constitutes "litigation conduct" or "settlement behavior" as defined by *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006).  Both parties similarly agreed to delay discovery and other related motion practice until the Court had decided the issue on summary judgment.

State Farm filed its Motion for Summary Judgment on July 31, 2009, arguing that its conduct was litigation conduct rather than settlement behavior and therefore inadmissible.  Budde filed her response August 18, 2009, asserting that State Farm's conduct was settlement behavior.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The nonmoving party must present more than a mere scintilla of evidence in support of his position; the nonmoving party must present evidence on which the trier of fact could reasonably find for the nonmoving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In *Knotts v. Zurich Ins. Co.*, the Kentucky Supreme Court established the standard for admissibility of post-filing conduct by an insurer in a bad faith case. 197 S.W.3d 512, 518 (Ky. 2006). The court held that only "settlement behavior" and not "litigation conduct" will be admissible in a bad faith case. *Id.* at 522. The court stated two public policy reasons which favor exclusion of litigation conduct: "[f]irst, permitting such evidence is unnecessary because during the

initial action, trial courts can assure that defendants do not act improperly. Next, and more importantly, the introduction of such evidence hinders the right to defend and impairs access to the courts." *Id.* at 520 (internal citations omitted).  As to the first policy reason, the court explained, "[t]he Rules of Civil Procedure control the litigation process and, in most instances, provide adequate remedies for improper conduct during the litigation process." *Id.*  Therefore, the test for determination of conduct that is exclusively litigation conduct rather than settlement behavior is whether the Civil Rules provide a remedy to the plaintiff upon failure of the defendant.  The court in *Knotts* cited and quoted *Palmer v. Farmers Ins. Exchange*, 861 P.2d 895 (1993), which stated that the Civil Rules provide clear boundaries for litigation conduct, and if those boundaries are exceeded, "the judge can strike the answer and enter judgment for the plaintiff, enter summary judgment for the plaintiff, or impose sanctions on the attorney." *Id.*  The *White* court, cited heavily in *Knotts,* explained that a motion for summary judgment may provide a remedy: "[i]f the insurer's defense is totally meritless, a motion for summary judgment can speed things along." *White v. Western Title Ins. Co.*, 710 P.2d 309, 325 (Cal.1985) (Lucas, J., concurring and dissenting).

As to the second policy reason, the court explains, "allowing evidence of the insurer's post-filing conduct . . . punishes insurers for pursuing legitimate lines of defense and obstructs their right to contest coverage of dubious claims." *Id.* The court sums up what evidence of post-filing conduct may be admissible:

> One should note a distinguishing factor between the insurer's settlement behavior during litigation and its other litigation conduct. The Rules of Civil Procedure provide remedies for the latter. To permit the jury to pass judgment on the defense counsel's trial tactics and to premise a finding of bad faith on counsel's conduct places an unfair burden on the insurer's counsel, potentially inhibiting the defense of the insurer. An insurer's settlement offers, on the other hand, are not a separate abuse of the litigation process itself. If a litigant refuses to settle or makes low offers, his adversary cannot avail himself of motions to compel, argument, or cross-examination

> to correct his failure.
>
> In principle, an insurer's duty to settle should continue after the commencement of litigation. If the insurer were immunized for objectional settlement conduct occurring after litigation begins, the insured would be left without a remedy. It makes sense, therefore, to hold the insurer responsible for such conduct. The rules, however, provide litigants with protection against other forms of litigation [conduct], and for that reason a court could rationally exclude evidence of the insurer's other misdeeds committed during the litigation process.

*Id.* at 523 (citing Stephen S. Ashley, Bad Faith Actions Liability and Damages § 5A:6 (2005)).

In order to determine the admissibility of the conduct at issue, the Court must first decide what conduct or behavior is at issue. Budde asserts that State Farm has refused to settle when liability was reasonably clear, while State Farm has asserted that there was no issue of settlement because the determination was coverage not the amount that would be paid out in the event of coverage. Thus, State Farm asserts that its conduct is litigation conduct, rather than settlement behavior, and therefore should be inadmissible under *Knotts*.

State Farm relies on *Rawe v. Liberty Mut. Fire Ins. Co.*, as an example of litigation conduct that is remedied by the Civil Rules. 462 F.3d 521 (6th Cir. 2006). In *Rawe*, the parties settled at mediation but the insurer refused to comply with the judgment unless the plaintiff executed an agreement releasing a broad array of claims. *Id.* at 524-25. The plaintiff moved the court for a writ of execution, pursuant to Rule 69 of the Federal Rules of Civil Procedure, to force the insurer to pay the judgment. *Id.* at 525. During the subsequent bad faith case, the court held that the refusal of the insurer to pay the settlement was inadmissible because there was a remedy available pursuant to the Civil Rules. *Id.* at 535 (holding "*Knotts*'s require[s] that we use the Rules of Civil Procedure as the litmus test for inadmissible litigation conduct . . . [the plaintiff] turned, as she should have, to Federal Rule of Civil Procedure 69 to force [the defendant] to execute the judgment. The Federal

Rules of Civil Procedure provided [the plaintiff] with a remedy").

State Farm explains that Budde had a remedy to resolve the coverage issue under the Rules of Civil Procedure: summary judgment pursuant to Rule 56. State Farm explains that Budde could move for summary judgment and she did so. State Farm asserts that the Civil Rules continued to govern the parties' conduct as State Farm appealed to the Kentucky Court of Appeals pursuant to Civil Rules 73 to 76. State Farm also argues that its conduct was not settlement behavior as intended by the Kentucky Supreme Court. State Farm contends, on the basis of *Hamilton Mut. Ins. Co. Of Ohio v. Barnett*, that settlement behavior is literally behavior during settlement offers. No. 2007-CA-000029-MR, 2008 WL 3162321 (Ky. App. Aug. 8, 2008). In *Barnett*, the conduct at issue involved numerous offers and counteroffers over the course of two years, resulting in a settlement agreement. *Id.* at *1. The court in *Barnett* admitted evidence "centered on settlement discussions" appearing to apply "settlement behavior" as it is commonly understood. *Id.* at *3-4.

Budde asserts that the conduct of State Farm was settlement behavior. Budde explains "State Farm expressly refused to make any settlement offers in its claim denial letter of December 28, 2005, in its Answer to the Complaint filed March 23, 2006, and in response to letter request for Virginia Budde's attorneys dated November 13, 2006, and May 8, 2007." Budde's bad faith case is based upon State Farm's refusal to settle her claim when liability was reasonably clear and Budde argues that there is no remedy under the civil rules for the insurer's refusal to settle. The court in *Knotts* stated, "[i]f a litigant refuses to settle or makes low offers, his adversary cannot avail himself of motions to compel, argument, or cross-examination to correct his failure."

The Court has found that all cases which concern the admissibility of settlement behavior have dealt with settlement negotiations, discussions, and offers. *See Hamilton Mut. Ins. Co. Of Ohio*

6

*v. Barnett*, No. 2007-CA-000029-MR, 2008 WL 3162321 (Ky. App. Aug. 8, 2008); *Athey v. Farmers Ins. Exchange,* 234 F.3d 357, 362 (8th Cir. 2000)(holding conduct during settlement negotiations admissible to show bad faith); *White v. Western Title Ins. Co.*, 710 P.2d 309, 317-318 (Cal.1985)(holding settlement offers admissible to show bad faith). Depending on coverage, this was an all or nothing case.

> State Farm argues that this case most closely resembles *Rawe*, where the court stated:
>
> While at first glance this complained-of conduct may appear to be settlement behavior akin to offering an unreasonably low settlement amount, *Knotts's* requirement that we use the Rules of Civil Procedure as the litmus test for inadmissible litigation conduct counsels us to conclude that Liberty Mutual's failure to pay the March 2004 judgment amount in the first lawsuit unless Rawe waived additional claims is litigation conduct, which *Knotts* deems inadmissible to prove bad faith. When confronted by Liberty Mutual's inequitable and illegal refusal to pay Rawe the $45,000 as due under the March 2004 judgment, Rawe turned, as she should have, to Federal Rule of Civil Procedure 69 to force Liberty Mutual to execute the judgment. The Federal Rules of Civil Procedure provided Rawe with a remedy, as Liberty Mutual then complied with the judgment. These circumstances are therefore a quintessential example of the sort of bad litigation conduct that the Rules of Civil Procedure adequately remedy, and that *Knotts* therefore deems inadmissible to prove bad faith.

462 F.3d at 535 (internal citation omitted). Here, State Farm asserted that there was no coverage. In *Rawe*, the insurer illegally refused to pay a judgment requiring the plaintiff to utilize Rule 69 to force the insurer to execute the judgment. *Id.* In this case, State Farm took the position that there was no coverage. The Plaintiff utilized Rule 56 and received a favorable judgment. State Farm appealed but agreed to pay the policy limits and costs if it lost. This is all litigation behavior. The Court believes the analysis is not this simple.

At first glance, *Knotts* is easily interpretable and not complex in its application. 197 S.W.3d 512 (Ky. 2006). The plaintiff could test State Farm's denial of coverage by a motion for summary

judgment. That is true. The Court believes the issues require a more in-depth analysis. The KUCSPA, KRS 304. 12-230, created a first party obligation to settle claims in good faith. The KUCSPA "imposes what is generally known as the duty of good faith owed by a insurer to an insured . . . bringing a claim under an insurance policy." *Knotts* 197 S.W. at 515. KUCSPA proscribes a list of particular acts and practices. "It is an unfair claims settlement practice for any person to commit or perform any of the following acts or omissions: (6) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear." KRS 304.12-230.

*Knotts* clearly held that the KUCSPA "continues to apply to an insurer so long as a claim is in play. As such, we hold that [the KUCSPA] applies both before and during litigation." *Knotts,* 197 S.W. at 517. *Knotts* went further to explain a significant factor of its decision:

> If KRS 304.12-230 were not applicable once litigation commenced, insurance companies would have the perverse incentive to spur injured parties toward litigation, whereupon the insurance company would be shielded from any claim of bad faith. Such a reading would undermine the statute's fundamental purpose by allowing insurance companies to engage in whatever sort of practice-fair or unfair-they see fit to employ. The remedial nature of the statute requires that we attempt to effectuate its purpose, which, in a situation like this one, requires applying the statute to conduct occurring after the commencement of litigation of a tort action.

*Id.*

The Court noted the decision was consistent with almost every other jurisdiction. It then noted the progression of the cases in which precedent developed relying heavily on *White* from California and *Palmer* from Montana. 710 P.2d 309 (Cal. 1985); 861 P.2d 895 (Mont. 1993). The court summarized the California approach as follows:

> In essence, California's approach has evolved to allow the introduction of unreasonable settlement behavior (specifically, low settlement offers) that occurs after suit has been filed while prohibiting the admission of litigation conduct,

techniques, and strategies.

*Knotts*, 197 S.W. at 519. As noted earlier the court then quotes at length from *Palmer*, a Montana case, to support an argument that there may be restrictions. *Id.* at 522. The court summarized its analysis of *Palmer* as follows:

> This is, no doubt, because *Palmer* expressly left the door open for the admission of evidence of extraordinary post-filing conduct to support a bad faith claim, with the restriction that it should "rarely be admitted." However, given the chilling effect that allowing introduction of evidence of litigation conduct would have on the exercise of an insurance company's legitimate litigation rights, any exception threatens to turn our adversarial system on its head. We are confident that the remedies provided by the Rules of Civil Procedure for any wrongdoing that may occur within the context of the litigation itself render unnecessary the introduction of evidence of litigation conduct. This is particularly true given that the attorneys, who in fact control and perpetuate the litigation conduct on behalf of an insurance company, are subject to direct sanction under the Civil Rules for any improper conduct. Though it goes without saying, we also note that those attorneys have significant duties under the Rules of Professional Responsibility, which allow for further sanctions for unethical behavior. Thus, we think the better approach is an absolute prohibition on the introduction of such evidence in actions brought under KRS 304.12-230.

The court concluded:

Our preferred rule as to what evidence of post-filing conduct may be admissible in a bad faith action is best summed up as follows:

One should note a distinguishing factor between the insurer's settlement behavior during litigation and its other litigation conduct. The Rules of Civil Procedure provide remedies for the latter. To permit the jury to pass judgment on the defense counsel's trial tactics and to premise a finding of bad faith on counsel's conduct places an unfair burden on the insurer's counsel, potentially inhibiting the defense of the insurer. An insurer's settlement offers, on the other hand, are not a separate abuse of the litigation process itself. If a litigant refuses to settle or makes low offers, his adversary cannot avail himself of motions to compel, argument, or cross-examination to correct his failure.

In principle, an insurer's duty to settle should continue after the commencement of litigation. If the insurer were immunized for objectional settlement conduct occurring after litigation begins, the insured would be left without a remedy. It makes sense, therefore, to hold the insurer responsible for such conduct. The rules, however,

> provide litigants with protection against other forms of litigation [conduct], and for that reason a court could rationally exclude evidence of the insurer's other misdeeds committed during the litigation process.

*Id.* (citation omitted).

This brings us to the ultimate question what is "litigation conduct" and what is "settlement behavior." There is no doubt that settlement behavior includes settlement offers. Most often when the court was discussing litigation conduct, it referenced litigation tactics and strategy in defending claims, such as discovery disputes. The court noted

> [i]n this case, as in *White*, the plaintiff did not contend that insurer's tactics in and of themselves were improper, rather the implicit claim was that the litigation strategy and tactics amounted to bad faith. The jury was allowed to consider Farmers' legitimate defense strategy and proper litigation tactics as evidence of bad faith, when the relevant inquiry should have been whether Farmers' had a reasonable basis for denying the claim.

*Id.* at 521. The insurers legitimate defense strategy and proper litigation tactics are not evidence of bad faith. The relevant inquiry is whether State Farm had a reasonable basis for denying the claim and making no offer of settlement.

This could be phrased another way: the issue of bad faith in this case is whether State Farm attempted in good faith to effectuate a prompt, fair and equitable settlement of the claim when liability became reasonably clear. Both parties raised the issue of liability in their briefs. State Farm argued forcibly that the case was a questionable claim and State Farm had grounds to litigate. The Plaintiff for several pages argued forcibly that liability or coverage was clear and State Farm refused to make an offer.

State Farm asserts the Plaintiff could contest State Farms defense of no coverage by using the Rules of Civil Procedure and rely on a motion for summary judgment, which she did. Certainly

the Plaintiff's filing a motion for summary judgment is litigation conduct. However, if State Farm failed to settle when liability has become clear that is bad faith under KUCSPA. The Court does not believe simply because the plaintiff won on a motion for summary judgment that negates conduct which taken in the light most favorable to the plaintiff could be bad faith.

> *Knotts* clearly understood this dilemma when it stated:
>
> If KRS 304.12-230 were not applicable once litigation commenced, insurance companies would have the perverse incentive to spur injured parties toward litigation, whereupon the insurance company would be shielded from any claim of bad faith. Such a reading would undermine the statute's fundamental purpose by allowing insurance companies to engage in whatever sort of practice-fair or unfair-they see fit to employ. The remedial nature of the statute requires that we attempt to effectuate its purpose, which, in a situation like this one, requires applying the statute to conduct occurring after the commencement of litigation of a tort action.

*Id.* at 517. If State Farm's argument is correct, then in every coverage dispute the insurer should immediately file a declaratory judgment lawsuit or assert a coverage issue in a pending claim, regardless of the merit. The plaintiff may win on summary judgment, but that is not evidence of bad faith. It is litigation conduct.

The Court finds a motion for summary judgment is litigation conduct; however, "not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear" is settlement behavior. In this case, the settlement behavior is not being forced to file a motion for summary judgment, that is litigation conduct; the settlement behavior is the allegation that State Farm did not attempt settlement when liability became clear.

The Plaintiff is not asserting that State Farm's legitimate defense strategy or proper litigation tactics or discovery use were evidence of bad faith. The Plaintiff argues liability was clear and State Farm never attempted to settle. The inquiry, which probably should be determined by the Court, is whether State Farm had a reasonable basis for denying the claim. The only "misdeed" claimed by

11

the Plaintiff is State Farm's failure to attempt settlement when liability became reasonably clear. That is settlement behavior and is bad faith as defined in KUCSPA.

The Court will hold a status conference with counsel to see if they wish to further brief any issue. If State Farm intends to rely on the advice of counsel letter it shall provide a copy to counsel along with any correspondence requesting the same.

## CONCLUSION

For the foregoing reasons the Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. The Court finds that the allegation that State Farm's refusal to settle after liability had become reasonably clear is settlement behavior, while the Plaintiff's filing of a motion for summary judgment, as well as State Farm's policy defense, are litigation conduct which is not evidence of bad faith.