# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CV-00053-TBR

VIRGINIA BUDDE                                                        PLAINTIFF

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff Virginia Budde's Motion to Alter Judgment (Docket # 48). Defendant State Farm Mutual Automobile Insurance Company has filed a response (Docket # 49). The Plaintiff has filed a reply (Docket # 50). This matter is now ripe for adjudication. For the reasons that follow, the Plaintiff's Motion to Alter Judgment is GRANTED.

## BACKGROUND

This action arises out of a motorcycle accident on May 7, 2005, which resulted in significant bodily injury to Virginia Budde, a passenger. The motorcycle was negligently operated by Jerry Jarrett. Jerry Jarrett and Budde were in a long term relationship and lived together in a home which they owned jointly. On the date of the accident, Budde had an automobile insurance policy with State Farm that provided underinsured motorist ("UIM") benefits. Budde's damages exceeded Jarrett's liability insurance coverage. Accordingly, Budde filed a claim under the UIM portion of her State Farm policy. State Farm denied Budde's claim based on an exclusion in the UIM section which does not allow for claims when the accident occurs in a vehicle furnished for the regular use of the insured or the insured's spouse or relative.

On March 2, 2006, Budde filed suit against State Farm in McCraken Circuit Court seeking

recovery of UIM benefits under the policy. The parties filed cross-motions for summary judgment in state court and the trial court ruled in Budde's favor. The Kentucky Court of Appeals affirmed and State Farm tendered its policy limits plus costs and interest to Budde.

Budde filed the current action in McCracken Circuit Court on March 4, 2009. State Farm removed the action to this Court on April 6, 2009, under diversity jurisdiction. Budde alleges a bad faith claim against State Farm for its refusal to settle Budde's claim. This Court determined in its order dated October 22, 2009 that the only potential settlement behavior subject to a bad faith claim was State Farm's refusal to settle. All other State Farm activity was litigation activity which cannot be the subject of a bad faith claim. In its Memorandum Opinion and accompanying order dated September 9, 2010, this Court dismissed the claim on the grounds that there was no evidence of bad faith.

**STANDARD**

A court may grant a motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law or to prevent manifest injustice." *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). "[C]ourts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered, and that to [c]onstitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Id.* A Rule 59(e) motion does not provide plaintiffs another opportunity to argue the merits of their case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e).

2

Motions to reconsider under Federal Rule of Civil Procedure Rule 60(b) seek extraordinary judicial relief and can be granted only upon a showing of exceptional circumstances. *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000) (citation omitted). The "general purpose" of the rule "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002) (citation omitted). The rule allows a court to relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). "Relief under Rule 60(b), moreover, is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 760 (6th Cir. 2005) (quoting *Waifersong Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir.1992)).

## DISCUSSION

As an initial matter, this is not the type of claim that has "exceptional circumstances" justifying "extraordinary judicial relief." *McAlpin,* 229 F.3d at 502-03. Rule 60(b) is therefore not appropriate. However, because the motion was filed within 28 days, if the requirements of Rule 59

are met, relief would be appropriate under that rule.

The law of insurer bad faith has long been established in Kentucky:

"An insured must prove three elements in order to prevail . . . for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed."

*Wittmer v. State Farm Mut. Auto. Ins. Co.*, 864 S.W.2d 885, 890 (Ky. 1993) (internal citations and alterations omitted). For the current motion, the first two elements are not in dispute. The only issue is whether there is sufficient evidence demonstrating that the insurer knew of or showed reckless disregard for a lack of a reasonable basis when denying the claim such that alteration of the previous summary judgment is necessary.

**I. Requirements for Showing Bad Faith**

Technical defects do not result in bad faith. *Id.* Rather, "there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to" justify punitive damages and "warrant submitting the right to award punitive damages to the jury." *Id.* Under Kentucky law, "what constitutes 'bad faith' in an insurer's failure to fulfill its contractual obligations to its insured is extremely restrictive." *Carruba v. Transit Cas. Co.*, 443 F.2d 260, 261 (6th Cir. 1971). Bad faith must be more than bad judgment or negligence - it involves "moral obliquity," "a breach of a known duty through some motive of interest or ill will" or "actual intent to mislead or deceive another." *Id.* The duty of good faith to an insured continues throughout the appellate phase, and an insurer must settle a case if an appeal would be taken in bad faith. *Id.* at 263. Finally, if "reasonable minds may differ on the inferences to be drawn from the evidence the question of good faith of the insurer in the handling of the claim . . . is for the jury." *Id.* (citing

4

*Harrod v. Meridian Mut. Ins. Co.*, 389 S.W.2d 74, 76 (Ky. 1965)).

The bad faith requirements have been reaffirmed in recent cases. To show bad faith, "the evidentiary threshold is high indeed." *United States Auto. Assoc. v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003). Conduct of the insurer must be "driven by evil motives or by an indifference to its insured's rights." *Id.* "Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown." *Id.* "Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to the jury." *Id.* Determining coverage exists does not automatically result in bad faith, because an "insurer's position must only be "fairly debatable," it need not be correct as a matter of law." *Cowan v. Paul Revere Life Ins. Co.*, 30 Fed. Appx. 384, 388 (6th Cir. 2002).

Additionally, "mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception . . . . There must be proof or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage." *Id.* at 190 (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). In this case, it is uncontested that Budde was eventually paid her full policy limits by State Farm. However, there is no case-on-point as to whether full payment only after losing at trial is considered "mere delay." Accordingly, it is unclear whether this is a case in which Plaintiff must show that the "mere delay" was an attempt to extort a more favorable settlement[1] or to deceive the insured with respect to applicable coverage, or a standard refusal to settle case in which Plaintiff need only offer more generic evidence of bad faith.

---

[1]There is no evidence that State Farm ever tried to leverage taking the claim to trial into a favorable settlement. To the contrary, all of the evidence demonstrates that State Farm consistently insisted on testing the policy at trial.

Finally, while advice of counsel is one issue that can be considered when analyzing bad faith, it is not dispositive. Advice of counsel does not provide an absolute defense against allegations of bad faith. *Hamilton Mut. Ins. Co. of Cincinnati v. Buttery*, 220 S.W.3d 287, 294 (Ky. App. 2007). The final claim determination is always the responsibility of the insurer - this is a duty that cannot be delegated to "anyone else-even its counsel." *Id.*

Plaintiff has brought to this Court's attention some factual issues that were not discussed in the Motion for Summary Judgment memoranda. As a general rule, a Court may not consider additional factual evidence otherwise available during the original proceedings with a motion to alter judgment. *GenCorp*, 178 F.3d at 834. However, it would still be appropriate to consider the new evidence if granting the motion to alter judgment would rise to the level of "preventing manifest injustice."

The most important piece of new evidence submitted by Plaintiff is a deposition showing generally that Retzlaff could not justify his claim denial based on the authority he cited as grounds for that denial.[2] Under Kentucky Law, it is clear that an insurer "remains ultimately responsible for

---

[2] "Q: . . . what do you find in the *Murphy* opinion that supports your statement that the coverage in *Murphy* was excluded because the car was available for the regular use of the fourteen-year old boy? . . . A: In my reading I did not find it . . . Q: Okay. And having re-read and reviewed again *Murphy*, would you agree that what that case turns on is that the vehicle was available for the regular use of the fourteen-year old injured person's mother and other family members and relatives? . . . A: In regard to that, basically it said that the furnished for regular use of the – you, your spouse, or any relative was – basically valid. It did not specifically address the fourteen-year old as I agreed with you on. However, they made their point on relative. . . . Q: . . . you would agree with me that the Court of Appeals panel that decided this case did not turn its decision in any way on the idea that the car was available for the regular use of the fourteen-year old boy? . . . A: It– yes, it looks like it didn't need to go that deep into it. . . . Q: Okay. Summarizing, having now re-read *Murphy*, you would agree with me that there is nothing in the *Murphy* Opinion that addresses that question of whether the subject vehicle was available for the regular use of the injured fourteen-year boy? . . . A: No. I agree that there's nothing in there that supports that. . . . Q: . . . you told me that you had read *Murphy* before you authored your report.

its own non-delegable statutory duty to properly investigate claims and adjust them in harmony with the terms of its policy . . . Reliance on the advice of counsel must be reasonable, and the insurer retains its obligation to exercise its own independent judgment in assessing an insured's rights under a policy." *Hamilton Mut. Ins. Co. of Cincinnati*, 220 S.W.3d 287, 294 (Ky. App. 2007). In this case, Retzlaff's deposition testimony suggests that he knew a claim denial was unreasonable, if he read the cases as he claims he did, and denied it none-the-less. He plainly admits that there is no support for the theory State Farm advanced during the underlying litigation in either of the cases used to form that theory. Accordingly, one could find that relying on the advice of counsel was unreasonable. Similarly, if it is later determined that Retzlaff did not, in fact, read the cases so as to determine that the advice was unreasonable, Retzlaff may have violated his duty to properly investigate and adjust claims. This potential violation of the insurer's duties justifies sending the case to a jury to determine if the violation was in bad faith.

In contrast, during the Motion for Summary Judgment, the Plaintiff only submitted evidence and argued that Attorneys Sims and Vasseur could not support their recommended claim denial based on their reading of *Murphy* or *Porritt*. While Sims and Vasseur's interpretations are potentially important, unless evidence demonstrates that Retzlaff had reason to be aware that his attorneys could not support their assessment when making his decision to deny the claim those interpretations are not indicative of Retzlaff's bad faith. Since Plaintiff submitted no evidence tending to show that Retzlaff was aware that Sims and Vasseur could not support the interpretations

---

A: Yeah. . . . Q: And now having re-read *Murphy*, you would agree with me that your statement in Exhibit 2 that the court even considered whether the subject vehicle was available for the regular use of the fourteen-year old boy is incorrect? A: That probably is incorrect, yes." *Deposition of Retzlaff*, DN 48, exhibit 3b, pgs. 2-13 (Deposition pgs. 44-55). A similar exchange occurs for *Porritt*.

7

of *Murphy* and *Porritt* they submitted to him with the Motion for Summary Judgment, there was no evidence to indicate any bad faith on the part of Retzlaff. Showing Retzlaff's inability to justify his own interpretation of the aforementioned authority, however, overcomes this failure of proof and shows that Retzlaff did, in fact, have reason to question the reasonableness of the determinations given to him by Attorneys Sims and Vasseur. Given the non-delegable duty Retzlaff and State Farm retain to make a determination on claims, this evidence is crucial when evaluating Defendant's bad faith. Since the claim denial opinion letter was considered as a factor in the good faith analysis, evidence that Retzlaff himself was unable to support his interpretations and accordingly should have questioned the reasonableness of the denial begins to establish evidence of a reasonable inference of bad faith.

Another piece of evidence establishing an inference of bad faith and warranting a jury trial is that Retzlaff may have outright ignored a portion of his attorney's advice. In his deposition, Retzlaff indicates he may have disregarded a critical part of the claims denial letter. During his deposition, Retzlaff stated that the status of Budde and Jarrett as co-habitators played no part in his decision to deny the claim. He also explicitly acknowledges that he may have disregarded a portion of the claim denial letter.[3] A review of the claims denial opinion letter and Retzlaff's claims committee worksheet supports this assertion. Upon review of the letter, a jury could determine that the portion disregarded by Retzlaff was essential to the outcome reached by State Farm's attorneys.[4]

---

[3] "Q: They're either legally married or they're not? A: Correct. Q: Okay. A: I know Van mentioned that in his letter, which, – but I did not hang on that." *Deposition of Retzlaff*, DN 48, exhibit 3b, pg. 28 (Deposition pg. 70).

[4] Mr Sims stated in his letter: "I do not think that Ms. Budde not being married to Mr. Jarrett is a distinction that would keep the exclusion for a vehicle that was regularly available for use of the insured from applying."

Clearly, disregarding an important part of an attorney's letter when formulating a claim denial and litigation strategy and then later relying on that same letter is evidence of unreasonable conduct.

The preceding evidence and the other evidence in the case supports an inference that the claim denial was unreasonable and in bad faith. An inference of bad faith supported by evidence requires that this case be decided by a jury. While the weight of the evidence may favor a finding of no bad faith, upon reconsideration, the Court finds that reasonable minds may differ in the inferences to be drawn from the evidence and the question of good faith of the insurer is for the jury. While new evidence should generally not be considered with a motion to alter judgment, denying Ms. Budde her jury trial under these circumstances would result in a manifest injustice.

## CONCLUSION

For all of the above reasons, this Court stands behind its original judgment and the Plaintiff's Motion to Alter Judgment is GRANTED.